# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTOPHER JUSTIN EADS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 1:14-cv-1169-TWP-DML |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## ENTRY DENYING MOTION FOR RELIEF PURSUANT TO
## 28 U.S.C. § 2255 AND DENYING CERTIFICATE OF APPEALABILITY

This matter is before the Court on a Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 filed by Petitioner, Christopher Justin Eads ("Eads"). For the reasons explained in this Entry, the Motion is **denied** and the action dismissed with prejudice. In addition, the Court finds that a certificate of appealability should not issue.

## I. BACKGROUND

Christopher Eads was charged with possession and distribution of child pornography and tampering with a potential witness. After a four-day trial, the jury convicted Eads on all counts (these being Counts 1, 2, and 5), and he was then sentenced to 480 months imprisonment. Following a hearing on his motion for new trial and the denial of said motion on May 4, 2012, his conviction was affirmed on appeal in *United States v. Eads*, 729 F.3d 769, 771–72 (7th Cir. 2013). The evidentiary summary from Eads's appeal is the following:

> Sometime in May 2011, Detective Darin Odier of the Indianapolis Metropolitan Police Department's Cyber Crimes Unit found an Internet Protocol (IP) address offering 400 files of nude children through a file sharing program called "Shareaza." Detective Odier obtained a subpoena for the Comcast subscriber associated with the IP address, and it came back with the name "Christopher Eads." By the time Detective Odier had prepared a search warrant, the IP address that belonged to Eads was no longer active. But by October 26, 2011, it was up and

running again. At this time, Detective Odier downloaded five files associated with Eads's IP address and found images with code names associated with child pornography such as, "Pedo Babyshivid Childlover Private Daughter Torpedo Ranchi Lolita" and "Pedo Dad F*cks Toddler Boy."

On November 15, 2011, detectives conducted a search of Eads's home and found two laptop computers, compact discs, thumb drives, and a Bersa .40–caliber handgun. When detectives searched the living room laptop, they discovered 6,937 images of child pornography (including one image with text written over it offering to rent a child for sex) and over thirty minutes in total of child pornography videos.

Both Eads and his wife, Rachel Smith Eads, were home during the search and Rachel agreed to speak with law enforcement. Eads yelled through the house, "Don't tell them anything." Rachel told detectives that after dating Eads for a couple of months, she found an FBI badge in his pants pocket. When she confronted him about it, he told her that he was an undercover FBI agent and that he had to download child pornography as part of his duties. Rachel further told detectives that the handgun they had found in the home belonged to Eads (which was a problem for Eads because he is a convicted felon).

Eads was later arrested and taken into federal custody. While in custody from November 29–30, 2011, Eads called Rachel from jail numerous times. Clearly frustrated and upset by Rachel's statements to police, Eads repeatedly demanded that she "make this right" and recant her statements. Eads proposed that Rachel write to the judge assigned to his case and state that Eads's former friend and houseguest, Nathan Asbury, was trying to set him up. Rachel promised to help her husband.

*Eads*, 729 F.3d at 772–73 (footnote omitted).

On July 14, 2014, Eads filed his Motion to Vacate, Set Aside or Correct Sentence alleging ten grounds as bases for his motion. (Dkt. 1.) On March 16, 2015 Eads filed an amendment to Claim six of his § 2255 motion. (Dkt. 16.) Thereafter, the Court accepted Eads amendment and clarified that the original § 2255 motion was amended by interlineation, such that claim 6 as restated in the motion to amend is now claim 6. (Dkt. 17.) The United States was given an opportunity to respond and that response is at docket 21.

## II. LEGAL STANDARD

Eads seeks relief pursuant to 28 U.S.C. § 2255. A petitioner may avail himself of § 2255 relief only if he can show that there are "flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude or result in a complete miscarriage of justice." *Boyer v. United States*, 55 F.2d 296, 298 (7th Cir. 1995), *cert. denied*, 116 S. Ct. 268 (1995). Section 2255 is limited to correcting errors that "vitiate the sentencing court's jurisdiction or are otherwise of constitutional magnitude." *Guinan v. United States*, 6 F.3d 468, 470 (7th Cir. 1993) (citing *Scott v. United States*, 997 F.2d 340 (7th Cir. 1993)).

## III. DISCUSSION

Eads first claims that he was denied the right of confrontation by the introduction of recorded jail telephone conversations between himself and his wife, Rachael, after he had been placed in federal custody. Eads' objection to the introduction of these recordings was overruled because Rachael's statements in the recordings were non-testimonial for purpose of applying the rule of *Crawford v. Washington*, 541 U.S. 36, 51 (2004). *See United States v. Neveaux*, 2016 WL 6024529, at *2 (E.D. La. Oct. 14, 2016); *Malone v. Kramer*, 2010 WL 1404286, at *16–17 (E.D. Cal. Apr. 6, 2010), *subsequently aff'd sub nom. Malone v. Felker*, 453 F. App'x 754 (9th Cir. 2011). In his 98 page brief (Dkt. 3), Eads correctly asserts that he could have called Rachael as a witness to clarify her statements. There was no constitutional violation in facing the choice between doing so and relying on the alternative, as he did. This was fully discussed on pages 13-14 of the Order denying Eads' motion for new trial. (*See* Crim. Dkt. 108 at 13-14[1].) Eads' first claim is therefore without merit.

---

[1] The criminal dockets of this action are located in case No. 1:11-cr-00239-TWP-KPF.

Eads' second claims rest on the asserted ineffective assistance of counsel—a claim which convicted defendants often present. Complaining about his lawyer's performance after the fact is "a favorite tactic of an unsuccessful criminal defendant," *Ford v. Israel*, 701 F.2d 689, 692 (7th Cir. 1983), and Eads' motion for relief pursuant to § 2255 is no exception.

To establish constitutionally ineffective assistance of trial counsel in violation of the Sixth Amendment, Eads must show that (1) his trial attorney's performance "fell below an objective standard of reasonableness," informed by "prevailing professional norms" and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984). "To reflect the wide range of competent legal strategies and to avoid the pitfalls of review in hindsight, [the Court's] review of an attorney's performance is highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Groves v. United States,* 755 F.3d 588, 591 (7th Cir. 2014) (citation omitted).

To establish prejudice, it is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding"; instead, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Carter v. Butts,* 760 F.3d 631, 635 (7th Cir. 2014) (quoting *Strickland*, 466 U.S. at 693-94).

A defendant also has the right to the effective assistance of counsel in his direct appeal. *Page v. Frank,* 343 F.3d 901, 909 (7th Cir. 2003). The standard for judging a claim of ineffective assistance of counsel is the same for both trial and appellate lawyers. *Matire v. Wainwright*, 811 F.2d 1430, 1435 (11th Cir. 1987).

For most of the period prior to trial, Eads was represented by federal community defender William Dazey ("Mr. Dazey"). This changed six days before trial, however, when Eads exercised his Sixth Amendment right to self-representation. *Faretta v. California,* 422 U.S. 806 (1975). As the Supreme Court reasoned in *Faretta,* "[t]he right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails." *Id.* at 819-20. According to *Faretta,* "a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'" *Id.* at 834 n.46.

The right just described "plainly encompasses certain specific rights to have his voice heard" and to "present his case in his own way." *McKaskle v. Wiggins*, 465 U.S. 168, 174 (1984). Thus, a "pro se defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial." *Id.* at 174. Eads' claims of ineffective assistance of counsel touch on both the *Strickland* standard and his rights under *Faretta*. Eads' *Faretta* waiver was challenged on appeal, but is not in doubt here. *Eads,* 729 F.3d at 776 ("We therefore conclude that Eads's waiver of his right to counsel was knowing and intelligent."). That waiver continued from the time it was accepted through sentencing and even through a post-trial motion for new trial. Nonetheless, the Court directed that Mr. Dazey serve as stand-by counsel to aid Eads. As the Third Circuit has observed:

> Essentially, standby counsel has two purposes—to act as a safety net to insure that the litigant receives a fair hearing of his claims and to allow the trial to proceed without the undue delays likely to arise when a layman presents his own case. Alternately, we can identify at least four functions that standby counsel can serve: (1) Standby counsel must be available if and when the accused requests help. *See Faretta,* 422 U.S. at 834 n.46, 95 S. Ct. at 2541 n.46. (2) Standby counsel must be ready to step in if the accused wishes to terminate his own representation. *See id.* (3) The court may appoint standby counsel in order to explain and enforce the basic rules of courtroom protocol to the accused. *See McKaskle,* 465 U.S. at 184, 104 S. Ct. at 954; *United States v. Campbell,* 874 F.2d 838, 849 (1st Cir. 1989). (4) The

5

court may appoint standby counsel in order to overcome routine obstacles that may hinder effective pro se representation. *See McKaskle,* 465 U.S. at 184, 104 S. Ct. at 954; *Campbell,* 874 F.2d at 849.

*United States v. Bertoli,* 994 F.2d 1002, 1018 (3d Cir. 1993). Indeed, the Supreme Court stated:

> *Faretta* rights are also not infringed when standby counsel assists the pro se defendant in overcoming routine procedural or evidentiary obstacles to the completion of some specific task, such as introducing evidence or objecting to testimony, that the defendant has clearly shown he wishes to complete. Nor are they infringed when counsel merely helps to ensure the defendant's compliance with basic rules of courtroom protocol and procedure. In neither case is there any significant interference with the defendant's actual control over the presentation of his defense.

*McKaskle,* 465 U.S. at 183.

Turning, therefore, to Eads' claims on these matters, the Court finds those claims to be without merit:

- Claim two: During the trial, Eads wished to speak privately with Rachael in connection with his trial strategy for the third day of trial. For security reasons, the Court did not permit this, but did permit Mr. Dazey to speak with Rachael. He did so. Rachael was not called as a witness, contrary to Eads's intended strategy. Rachael was available on the fourth day of trial, but Eads complained that Mr. Dazey's unsolicited participation on this subject the previous day had already violated *Faretta's* guarantee. In fact, Mr. Dazey's participation may have been "unsolicited" from Eads's perspective, but it was authorized by the Court to accommodate Eads' desire that Rachael be consulted about testifying before she was called. This arrangement facilitated the orderly and efficient development of the trial. And contrary to Eads' present argument, this type of assistance--which did not infringe on Eads' "control" over his own defense--is well within the scope of duties to which stand-by counsel can be properly assigned under *Faretta.*

- Claim three: Eads' next specification is that his appellate attorney was ineffective in failing to present arguments centered on (1) Eads' confrontation claim, and (2) Eads' claim of a *Faretta* violation during trial. When a petitioner raises an ineffective assistance of appellate counsel claim, the prejudice prong "is established if the issue not raised may have resulted in a reversal of the conviction or an order for a new trial." *Lee v. Davis*, 328 F.3d 896, 900-01 (7th Cir. 2003). Put differently, "[p]rejudice exists . . . if counsel bypassed an [sic] nonfrivolous argument that, if successful, would have resulted in the vacation of [the petitioner's] conviction." *Shaw v. Wilson*, 721 F.3d 908, 918 (7th Cir. 2013). "[W]hen evaluating prejudice, unlike when evaluating attorney performance, hindsight is permissible." *Id.* Given the resolution of Eads' first two § 2255 claims, it is evident that he was not prejudiced by his appellate attorney's failure to include those claims in the direct appeal.

6

These interrelated allegations of *Faretta* error and the ineffective assistance of counsel therefore are meritless and do not warrant the relief Eads seeks.

In claim four, Eads alleges that he was denied due process and the effective assistance of counsel by the admission of prejudicial character evidence. Not so. The child pornography was relevant to how the United States could meet its burden of proof that the images located on Eads' computer were in fact child pornography. Also, as was noted in the Order of May 4, 2012, "Eads opened the door himself to his prior conviction for theft . . . [and] the Court gave a limiting instruction that the conviction is not relevant to any issue in this case. . . . (Crim. Dkt. 108 at 15.) In addition, "evidence concerning a handgun was admitted for the limited purpose of identity and the jury was so instructed." (*Id*.) As stand-by counsel, Mr. Dazey had no duty to Eads to propose jury instructions absent a request from Eads that he do so.

In claim five, Eads asserts that Mr. Dazey was under a duty to inform the Court that Eads was under the influence of prescription medication during the initial *Faretta* hearing. But the validity of Eads' *Faretta* waiver was raised in Eads' direct appeal, after his motion for a new trial had been denied, and cannot be re-raised here under the circumstances he offers. *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995).

Eads also alleges in claim six, that he was abandoned by Mr. Dazey during trial preparation. The record persuasively refutes this contention. This is evident from the docket activity, including the issuance of several trial subpoenas, and the many other circumstances recounted in the Order denying Eads' motion for a new trial. In his amendment to claim six, Eads alleges that Mr. Dazey was ineffective in not showing him the child pornography which was charged in Counts 1 and 2 and induced him (as a matter of trial strategy) to enter a stipulation that the images and videos in

7

question were in fact child pornography according to law. As noted earlier, Eads self-representation began several days prior to trial. Eads was "in control" and he himself could have brought these concerns or changes in trial strategy to the attention of the Court. This claim is nothing more than Eads' regret in having entered into a stipulation with the United States that certain exhibits did fit the legal definition of child pornography. His regret cannot be leveraged onto Mr. Dazey's role or laid at Mr. Dazey's feet.

Claim ten is an allegation that appointment of Mr. Dazy as standby counsel was a violation of Eads due process rights. The Court has addressed this contention earlier in this Entry and again, finds no merit to this argument.

Eads' final claims – regarding Nathan Asbury and newly discovered evidence – were thoroughly discussed and rejected in the Order denying his motion for new trial. (Crim. Dkt. 108 at 8-12.) No different resolution is now warranted.

## IV. **CONCLUSION**

Once convicted and after exhaustion or waiver of any right to appeal, a defendant is presumed to stand "fairly and finally convicted." *United States v. Frady,* 456 U.S. 152, 164 (1982). For the reasons explained in this Entry, the effort of Christopher Eads to show otherwise through his motion for relief pursuant to 28 U.S.C. § 2255 fails. No evidentiary hearing is warranted. The Motion to Vacate, Set Aside, or Correct Sentence (Dkt. 1) is **DENIED** and a copy of this Entry shall be docketed in the underlying criminal action, **Case No. 1:11-cr-239-TWP-KPF**.

## V. **CERTIFICATE OF APPEALABILITY**

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the Rules Governing § 2255 Proceedings, and 28 U.S.C. § 2253(c), the Court finds that Eads has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of

a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore denies a certificate of appealability.

**SO ORDERED.**

Date: 5/17/2017

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Christopher Justin Eads, #10391-028
Tucson U.S. Penitentiary
Inmate Mail/Parcels
P.O. Box 24550
Tucson, Arizona 85734

Winfield D. Ong
UNITED STATES ATTORNEY'S OFFICE
winfield.ong@usdoj.gov